UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION
ASHLAND

CIVIL ACTION NO. 16-48-HRW

DIVERSICARE LEASING CORP. D/B/A
CARTER NURSING & REHABILITATION CENTER;
OMEGA HEALTHCARE INVESTORS, INC.;
DIVERSICARE HEALTHCARE SERVICES, INC.
F/K/A ADVOCAT, INC.; AND DIVERSICARE
MANAGEMENT SERVICES COMPANY ,                                    PLAINTIFFS,


v.            **MEMORANDUM OPINION AND ORDER**


BRANDON HELMICK, Executor of the
MARIAN SAMMONS,                                                  DEFENDANT.


This matter is before the Court upon Plaintiffs' Motion to Compel Arbitration and Enjoin Defendant [Docket No. 12]. The motion has been fully briefed by the parties [Docket Nos. 12-1, 16 and 17]. For the reasons set forth herein, the Court finds that the arbitration agreement which forms the basis of this lawsuit must be honored.

I.

Marian Sammons was admitted to Carter Nursing & Rehabilitation Center on January 23, 2015. At that time, Ms. Sammons's daughter, Sharon Suttles, was Ms. Sammons's attorney-in-fact.

In connection with Ms. Sammons's admission, Ms. Suttles executed admissions documents on behalf of herself and Ms. Sammons. The Admission Agreement, entered into between Ms. Suttles, Ms. Sammons, and Carter Nursing & Rehabilitation Center, provided that "[b]y signing this Agreement, you and your Responsible Party make certain agreements and promises, and the Facility makes certain agreements and promises." [Admission Agreement, Docket No. 12-5 at p. 1]. Marian Sammons is expressly designated as the resident to be admitted to Carter Nursing & Rehabilitation Center and Sharon Suttles is designated as the Responsible Party. *Id.*

On that same date, Ms. Suttles executed an Arbitration Agreement on behalf of herself and her mother. The Arbitration Agreement, an Addendum to the Admission Agreement, expressly states as follows:

> This Agreement is made between Carter "Facility" and Thomas Riley and Marian Sammons "Resident" and, if applicable, "Resident's Authorized Representative," individually and on behalf of the resident, and is an addendum to and part of the Admission Agreement. The Resident's Authorized Representative agrees to be bound by this Agreement as a party, both as a representative of the Resident and in an individual capacity.

[Arbitration Agreement, Docket No. 12-2 at p. 1].

Pursuant to the Arbitration Agreement, the parties agreed "that any legal dispute, controversy, demand, or claim that arises out of or relates to the Resident Admission Agreement or is in any way connected to the Resident's stay at the Facility shall be resolved exclusively by binding Arbitration and not by a lawsuit or resort to other court process." *Id.*

The Agreement expressly included the following:

> [A]ny claim for payment, non-payment, or refund for services rendered to the Residency by the Facility, claims arising out of State or Federal law, claims based upon breach of contract, breach of fiduciary duty, violation of rights, fraud, or misrepresentation, common law or statutory negligence, gross negligence, malpractice, abuse, neglect or any other claim based on any departure from accepted standards of medical or nursing care, whether such claims be for statutory, compensatory, or punitive damages, and whether arising in the future or presently existing.

*Id.* at p. 2.

The parties acknowledged that they were "agreeing to mutual arbitration, regardless of which of us may make a claim, and that we will mutually benefit from the resolution of disputes through arbitration." *Id.* at p. 1.

On March 1, 2016, Brandon Helmick filed an action in the Carter Circuit Court seeking money damages for alleged injuries to Marian Sammons arising out of her residency at Carter Nursing & Rehabilitation Center ("the State Court Action").

Plaintiffs allege that Defendant has refused to arbitrate his claims. Therefore, they brought this petition under § 4 of the Federal Arbitration Act. Plaintiffs now move this Court to compel arbitration and enjoin the proceedings in the State Court Action.

## II.

The Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 et seq., "manifests a liberal federal policy favoring arbitration agreements." *Masco Corp. v. Zurich American Ins. Co.*, 382 F.3d 624, 626 (6th Cir.2004) (*quoting Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983)) (internal quotation marks omitted).

Under the FAA, when contracts contain arbitration clauses, federal courts "are to examine

3

the language of the contract in light of the strong federal policy in favor of arbitration," and are required to resolve any ambiguities in the agreement or doubts as to the parties' intentions in favor of arbitration. *Stout v. J.D. Byrider*, 228 F.3d 709, 714 (6th Cir.2000); *see also AT & T Techs., Inc. v. Communications Workers of Am.*, 475 U.S. 643, 650, 106 S.Ct. 1415, 89 L.Ed.2d 648 (1986) (explaining that when a "contract contains an arbitration clause, there is a presumption of arbitrability in the sense that an order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be in favor of coverage.") (internal citations and quotation marks omitted).

Before compelling an unwilling party to settle a dispute by arbitration, the Court must apply a two-part test "to determine whether the dispute is arbitrable; meaning that a valid agreement to arbitrate exists between the parties, and that the specific dispute falls within the substantive scope of that agreement." *Javitch v. First Union Sec., Inc.*, 315 F.3d 619, 624 (6th Cir. 2003). The Sixth Circuit has recognized hat even when applying state-law principles of contract interpretation, " 'due regard must be given to the federal policy favoring arbitration, and ambiguities as to the scope of the arbitration clause itself resolved in favor of arbitration.' " *Bratt Enterprises, Inc.*, 338 F.3d at 613 (*quoting Volt Info. Scis., Inc. v. Bd. of Trustees of Leland Stanford Junior Univ.*, 489 U.S. 468, 475–76, 109 S.Ct. 1248, 103 L.Ed.2d 488 (1989)). The court then "shall order arbitration upon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue." *Rent–A–Center*, 130 S.Ct. at 2776 (quoting 9 U.S.C. § 4).

Finally, in evaluating motions to compel arbitration, "courts treat the facts as they would in ruling on a summary judgment." *Kovac v. Superior Dairy, Inc.*, 930 F.Supp.2d 857, 864 (N.D.Ohio 2013). Therefore, the party opposing arbitration bears the burden of "showing a genuine issue of material fact as to the validity of the agreement to arbitrate." *Great Earth Cos. v. Simons*, 288 F.3d 878, 889 (6th Cir.2002).

### III.

Defendant contends that the Arbitration Agreement is not enforceable. He argues, specifically, the power of attorney did not contain sufficient language to authorize Ms. Suttles to agree to arbitration of a wrongful death claim. Defendant maintains that pursuant to *Ping v. Beverly Enterprises*, 376 S.W.3d 581 (Ky. 2012), because the decedent's daughter executed the arbitration agreement pursuant to a written power of attorney, rather than the decedent herself the agreement is unenforceable.

When presented with similar facts and arguments, multiple courts in this District as well as the Western District of Kentucky have considered and rejected this very argument.

The power of attorney in *Ping*, unlike the power of attorney in the present matter, "relate[d] expressly and primarily to the management of [the principal's] property and financial affairs and to assuring that health-care decisions could be made on her behalf." *Ping v. Beverly Enterprises*, 376 S.W.3d at 592. While there was a general grant authorizing the attorney-in-fact "[t]o make any and all decisions of whatever kind, nature or type regarding . . . medical care," the court determined that "[t]he general expressions . . . did not give [the attorney-in-fact] a sort of universal authority beyond those express provisions." *Id.* Moreover, the court determined,

5

"[a]bsent authorization in the power of attorney to settle claims and disputes or some such express authorization addressing dispute resolution, authority to make such a waiver is not to be inferred lightly." *Id.* The absence of this express and specific grant of authority was central to the Kentucky Supreme Court's determination that the arbitration agreement at issue was unenforceable.

Unlike the power of attorney document at issue in *Ping*, the power of attorney in the present matter expressly grants to Ms. Sammons' daughter the authority to sign contracts and institute or defend suits. Pursuant to terms of the written POA, Ms. Sammons expressly and unequivocally granted the attorney-in-fact the authority "to draw, make, and sign any and all checks, contracts, or agreements," "to institute or defend suits concerning my property or rights," and "generally to do and perform for me in my name all that I might do if present."

Moreover, the power of attorney at issue in the present matter contains *Ping*'s requisite "express authorization" to give an attorney-in-fact sufficient authority to enter into an arbitration agreement on a principal's behalf. Thus, Defendant's claim that the *Ping* decision, "standing alone would require the overruling of the Plaintiff's motion," is simply without merit.

In a last ditch attempt to undermine to validity of the Arbitration Agreement, Defendant relies upon *Extendicare Homes, Inc. v. Whisman*, 478S.W.3d 306, (Ky. 2015), *as corrected* (Oct. 9, 2015), *rehearing denied* (Feb. 18, 2016), *petition for Certiorari filed* (July 1, 2016). In *Whisman*, the Kentucky Court held that a POA granting the power to "institute or defend suits concerning my property rights" did not confer authority to enter into a pre-dispute arbitration agreement because arbitration is not a "suit" as the term is commonly understood, but rather a

process designed to avoid suits. *Id.* at 323.

As *Whisman* painstakingly percolates through the federal judicial system, federal Court in Kentucky have held on several separate occasions that *Whisman* violates the Federal Arbitration Act. *See, Brandenburg Health Facilities, LP v. Mattingly*, 2016 U.S. Dist. LEXIS 79729 (W.D. Ky. June 20, 2016), *Diversicare Highlands, LLC v. Lee*, 2016 U.S. Dist. LEXIS 80905 (W.D. Ky. June 21, 2016) and *Preferred Care of Del., Inc. v. Estate of Hopkins*, 2016 U.S. Dist. LEXIS 81620 *11 (W.D. Ky. June 22, 2016).

For example, in *Brandenburg*, the District Court declined the apply *Whisman* "to the extent that it conflicts with U.S. Supreme Court precedent by treating an agreement to arbitrate differently than any other contract." 2016 U.S. Dist. LEXIS at *13. The Court explained that, despite *Whisman*'s holding that a power of attorney must expressly grant the authority to enter into an arbitration agreement, "[t]he FAA's purpose . . . is to place arbitration agreements upon the same footing as other contracts." *Id.* at *12 (internal quotation omitted). Thus, as *Whisman* violated the FAA and United States Supreme Court precedent, the Court found that the arbitration agreement signed in connection with the decedent's admission to a nursing home was enforceable.

Likewise, in *Hopkins*, the Court again found that "[a]pplying *Whisman* to invalidate the arbitration agreement signed by Decedent's husband would run afoul of the FAA." Because *Whisman* contravened the FAA, the Court declined to apply its rule regarding the authority required to enter into arbitration agreement and enforced the arbitration agreement signed in connection with the decedent's admission to a nursing home. 2016 U.S. Dist. LEXIS at *12.

Moreover, *Whisman* may not have any relevance in this instance. The POA in this case

7

differs from the wording of the POAs in *Whisman* in at least one important way: As noted repeatedly by the Kentucky Supreme Court in *Whisman*, the Court in that case was concerned about the fact that there was not an express reference in the Power of Attorney denoting the ability of the attorney- in-fact to enter into waivers of rights. However, in this case, the POA *expressly* gave Ms. Allen the authority to execute consents, waivers, and releases of liability.

Although Defendant attempts to minimize the authority granted to Ms. Suttles in the power of attorney document at issue in this case by relying on the title of the document, the authority granted to her far exceeded that of a health care surrogate with authority to make only health care decisions. As set forth in Plaintiffs' Motion to Compel Arbitration, the power of attorney document at issue in this case expressly gave Ms. Suttles the authority to execute consents, waivers, and releases of liability.

The Arbitration Agreement is valid and neither unconscionable nor against public policy and, therefore, must be enforced. Further, the Arbitration Agreement encompasses the very claims Defendant has asserted against Plaintiffs in the State Court Action.

Having found that Defendant must submit his claims to arbitration, the question remains whether this Court should enjoin her from pursuing her parallel action in state court. The Court finds that such an injunction is necessary, and the Defendant is enjoined from proceeding Carter Circuit Court. "Although the FAA requires courts to stay their own proceedings where the issues to be litigated are subject to an agreement to arbitrate, it does not specifically authorize federal courts to stay proceedings pending in state courts." *Great Earth Companies, Inv. v. Simmons*, 288 F.3d 878, 893 (6th Cir. 2002) (internal citations omitted). For this reason, "the District Court's authority to enjoin state-court proceedings is subject to the legal and equitable standards for

injunctions generally, including the Anti Injunction Act." *Id.* Pursuant to the Anti–Injunction Act, "[a] court of the United States may not grant an injunction to stay proceedings in a State court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments." 28 U.S.C. § 2283.

An injunction in this case "properly falls within the exception for injunctions 'necessary to protect or effectuate [this Court's] judgments.' " *Great Earth*, 288 F.3d at 894. The Court has determined that the parties entered into a binding arbitration agreement covering the scope of Defendant's claims. Having made such a determination and compelling him to submit to arbitration, it is necessary to enjoin Defendant from pursing his claims in any alternative forum, including state court. Otherwise, she would be permitted to circumvent her arbitration agreement and in doing so, circumvent this Court's judgment that she be compelled to arbitrate his claims. Accordingly, the Court will order that Defendant be enjoined from proceeding with his pending state-court action.

### IV.

A valid and binding arbitration agreement was executed. This matter must be referred to arbitration.

Accordingly, **IT IS HEREBY ORDERED**:

(1)   Plaintiffs' Motion to Compel Arbitration and to Enjoin Defendant [Docket No. 12] be **SUSTAINED**;

(2)   Defendant shall prosecute all of her claims arising out of Marian Sammons' residency at Carter Nursing & Rehabilitation Center in accordance with the terms

of the Arbitration Agreement ; and

(4)  that this matter is hereby **DISMISSED WITH PREJUDICE** and **STRICKEN** from the active docket of the Court.

This Court will retain jurisdiction over this matter for the purpose of enforcing any arbitration award and all other issues that may become germane.

This ___1___ day of September, 2016.



Signed By:
*Henry R. Wilholt, Jr.*
United States District Judge